UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANY AMERICA INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>THE G.W. VAN KEPPEL COMPANY,<br><br>  Defendant. | CIVIL ACTION NO.<br>1:23-CV-03532-JPB |

## **ORDER**

This matter is before the Court on Sany America Inc.'s ("Sany") Motion to Dismiss Second Amended Counterclaim [Doc. 39]. This Court finds as follows:

### **PROCEDURAL HISTORY**

Sany filed this action against The G.W. Van Keppel Company ("Van Keppel") on August 7, 2023, alleging breach of contract. [Doc. 1]. On October 19, 2023, Van Keppel filed an Answer and Counterclaim. [Doc. 17]. Van Keppel has amended its counterclaim twice. In Van Keppel's Second Amended Counterclaim, which was filed on December 8, 2023, Van Keppel asserts a single cause of action: violation of the Arkansas Franchise Practices Act ("the AFPA"). [Doc. 36, p. 9]. Sany filed the instant Motion to Dismiss Second Amended

Counterclaim on December 20, 2023. [Doc. 39]. The motion is now ripe for review.

## BACKGROUND

The following facts are taken from Van Keppel's Second Amended Counterclaim. Van Keppel is a dealer of heavy construction equipment. [Doc. 36, p. 6]. Sany is a supplier of construction equipment. Id. The parties' relationship began in 2013 when Van Keppel entered into an agreement with Sany that allowed Van Keppel to be an authorized distributor and service provider for Sany. Id.

In 2018, a dispute arose between the parties which culminated in Van Keppel filing suit against Sany. Id. at 6–7. After the suit was filed, the parties were able to resolve their differences by entering into a settlement agreement that included as an exhibit a new dealer agreement (together, "Settlement Agreement"). [Doc. 40-1].[1] Sections 7, 8 and 9 of the Settlement Agreement, which are relevant

---

[1] As a general rule, courts are not permitted to look beyond the pleadings when deciding a Rule 12(b)(6) motion. Kalpakchian v. Bank of Am. Corp., 832 F. App'x 579, 582 (11th Cir. 2020). An exception to this general rule exists, however. The Eleventh Circuit Court of Appeals has adopted the "incorporation by reference" doctrine, which allows a court to consider documents attached to a motion to dismiss if the documents are "referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." Hi-Tech Pharms., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1189 (11th Cir. 2018). In this case, the incorporation by reference doctrine applies because the Settlement Agreement is referred to in the Second Amended Counterclaim, is central to the claim and is of undisputed authenticity. The Court will thus consider the Settlement Agreement in resolving the instant motion.

here, required Van Keppel to meet or exceed a three percent market share for two different classes of excavators (the under ten metric ton class and the thirteen to fifty metric ton class) and use all reasonable efforts to obtain a seven percent market share for the thirteen to fifty metric ton class by 2023.  Id. at 2–3.

On June 2, 2022, Sany notified Van Keppel that it was terminating the Settlement Agreement ("Termination Notice") effective June 30, 2022, due to the failure to meet the market share requirements identified above, the failure to effectively promote and sell Sany products and the failure to send personnel to training conducted by Sany.² [Doc. 36, p. 8].  More specifically, the Termination Notice indicates that Van Keppel failed to meet the market share requirements in 2019, 2020 and 2021; failed to effectively promote Sany products as evidenced by the fact that the sales targets were not met; and failed to send personnel to training in "2/21-22, 2/23-24."  [Doc. 40-2, pp. 2–3].  According to Van Keppel, it was unable to meet the market share requirements because Sany failed to fulfil Van Keppel's orders in a timely manner due to supply chain issues caused by the COVID-19 pandemic.  [Doc. 36, p. 8].  Van Keppel also alleged that the failure to meet market share requirements was a pretext for the termination.  Id. at 7.  Indeed, Van Keppel asserted that Sany terminated the contract because Van Keppel began

---

² For the same reasons that the incorporation by reference doctrine applies to the Settlement Agreement, it also applies to the Termination Notice.

3

selling Hyundai CE equipment in addition to the Sany equipment.  Id.  As to the failure to send personnel to training, Sany alleged that its employees participated in sales and product support training conducted by Sany in February 2022.  Id. at 8.

The Termination Notice did not provide Van Keppel an opportunity to cure any of the alleged deficiencies in Van Kepppel's performance.[3]  Id.  Moreover, after Sany sent the Termination Notice, Van Keppel provided Sany with data indicating that it was meeting the market share requirements and was on track to exceed the requirements in 2022.  Id.  In response, Sany indicated that it would not reconsider its position or provide Van Keppel with an opportunity to cure.  Id.

## LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff."  Traylor v. P'ship Title Co., 491 F. App'x 988, 989 (11th Cir. 2012).  Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the

---

[3] The Court recognizes that the Termination Notice states that Sany "has worked diligently with Van Keppel in an effort to assist Van Keppel with developing an action plan to improve the performance issues under the Dealer Agreement.  However, in spite of these efforts, Van Keppel continues to show no signs of improvement." [Doc. 40-2, p. 3].  The Court is uncertain as to whether this satisfies the AFPA's requirement of an opportunity to cure.  In any event, the statements give no indication as to how long Van Keppel had to correct any deficiencies.

claim showing that the pleader is entitled to relief." Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint is insufficient if it only tenders naked assertions devoid of further factual enhancement. Id. Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citation omitted). In sum, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," id., and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Traylor, 491 F. App'x at 990 (quoting Iqbal, 556 U.S. at 678). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations. Iqbal, 556 U.S. at 678. Accordingly, evaluation of a motion to dismiss requires two steps: (1) a court must eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are remaining well-pleaded factual allegations, a court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

# DISCUSSION

A.C.A. § 4-72-204, which is part of the AFPA, governs terminations and cancellations of franchise agreements and provides the following:

> (a) It shall be a violation of [the AFPA] for a franchisor to:
>
>  (1) Terminate or cancel a franchise without good cause; or
>
>  (2) Fail to renew a franchise except for good cause or except in accordance with the current policies, practices, and standards established by the franchisor which in their establishment, operation, or application are not arbitrary or capricious.
>
> (b) No franchisor shall directly or indirectly terminate, cancel, or fail to renew a franchise without first giving written notice to the franchisee at least ninety (90) days in advance of such action, setting forth the reasons for the termination, cancellation, or intention not to renew, and, in the case of terminations, shall provide the franchisee with thirty (30) days in which to rectify any claimed deficiency.

The Second Amended Counterclaim alleges that Sany violated the AFPA when it terminated the contract because it failed to provide the adequate ninety-day notice, failed to identify good cause for the termination and failed to provide an opportunity to cure. See [Doc. 36, p. 9]. The Court will first analyze whether Van Keppel has alleged sufficient factual matter to show a violation of the notice and opportunity to cure provision of the AFPA.

1. **Notice and Opportunity to Cure**

The Notice Provision of the AFPA provides that no franchisor shall terminate a franchise without giving written notice to the franchisee at least ninety days in advance of such action.  A.C.A. § 4-72-204(b).  The AFPA also states that in the case of terminations, the franchisor shall provide the franchisee with thirty days in which to rectify any claimed deficiency.  Id.

The Court is satisfied that Van Keppel has stated a claim under this provision of the AFPA.  Here, the Second Amended Counterclaim alleges, and the Termination Notice confirms, that Sany gave written notice to Van Keppel on June 2, 2022, that it would be terminating the relationship on June 30, 2022—only twenty-eight days later.  [Doc. 36, p. 8].  Because this notice period was only twenty-eight days, it is reasonable to infer that Sany gave neither the required ninety-day notice before termination nor the requisite thirty-day opportunity to cure.  Moreover, Van Keppel specifically alleged that Sany "would not reconsider its position or provide Van Keppel an opportunity to cure."  Id.

The Court is not convinced that Ven Keppel is required to allege that the deficient notice or opportunity to cure period was the proximate cause of specific damages.  See Larry Hobbs Farm Equipment, Inc. v. CNH Am., LLC, No. 2:08CV00049, at *9 (E.D. Ark. Aug. 22, 2008) (holding that to state a claim for

7

violation of the notice provision under the AFPA, the plaintiff must allege that the deficient notice itself was the proximate cause of some specific damages). While it may be true that Van Keppel's damages are limited to those that accrued during the notice periods, the Court does not believe that the pleading requirements demand such specificity or exact quantification. In this case, Van Keppel alleged that it suffered, and will continue to suffer, significant economic losses by Sany's termination of the franchise agreement. [Doc. 36, p. 8]. At this stage of litigation where all reasonable inferences must be drawn in favor of Van Keppel, the Court can infer that some of those damages suffered by Van Keppel occurred during the deficient notice period. Thus, the claims premised on lack of adequate notice and the opportunity to cure are not subject to dismissal.

2. **Good Cause**

The AFPA provides that a franchisor cannot terminate or cancel a franchise without good cause. The AFPA defines good cause as the following:

> (A) Failure by a franchisee to comply substantially with the requirements imposed upon him or her by the franchisor, or sought to be imposed by the franchisor, which requirements are not discriminatory as compared with the requirements imposed on other similarly situated franchisees, either by their terms or in the manner of their enforcement;
>
> (B) The failure by the franchisee to act in good faith and in a commercially reasonable manner in carrying out the terms of the franchise;

    (C) Voluntary abandonment of the franchise;

    (D) Conviction of the franchisee in a court of competent jurisdiction of an offense, punishable by a term of imprisonment in excess of one (1) year, substantially related to the business conducted pursuant to the franchise;

    (E) Any act by a franchisee which substantially impairs the franchisor's trademark or trade name;

    (F) The institution of insolvency or bankruptcy proceedings by or against a franchisee, or any assignment or attempted assignment by a franchisee of the franchise or the assets of the franchise for the benefit of the creditors;

    (G) Loss of the franchisor's or franchisee's right to occupy the premises from which the franchise business is operated; or

    (H) Failure of the franchisee to pay to the franchisor within ten (10) days after receipt of notice of any sums past due the franchisor and relating to the franchise.

A.C.A. § 4-72-202(5).

Sany argues that this claim must be dismissed because the Second Amended Counterclaim merely provides "'a formulaic recitation of the elements' of that claim rather than giving sufficient detail, warranting dismissal." [Doc. 39, p. 6]. The Court disagrees.

The Court acknowledges that the Termination Notice indicated that the termination was due to the failure to meet the market share requirements, the failure to effectively promote and sell Sany products and the failure to send

9

personnel to training.  Although these reasons would likely be good cause for termination if they prove to be true, the Court cannot ignore that Van Keppel alleged that the failure to meet the market share requirements was not the real reason for the termination.  Instead, Van Keppel asserted that the termination actually occurred because Van Keppel began selling Hyundai CE equipment.  Moreover, Van Keppel alleged that in February of 2022, its employees did participate in sales and product support training conducted by Sany.  Because Van Keppel does more than simply allege that it was terminated without good cause, the claim premised on lack of good cause is not subject to dismissal.

## CONCLUSION

For the reasons stated above, Sany's Motion to Dismiss Second Amended Counterclaim [Doc. 39] is **DENIED**.

**SO ORDERED** this 12th day of July, 2024.

J. P. BOULEE
United States District Judge